JOHN F. CORDES, Appellant, *v.* GEORGE STRASZER ET AL., Respondents.

### November 18, 1879.

1. A conveyance collusively made between debtor and creditor, professedly to secure an indebtedness which does not exist, is void as to other creditors, though it covers and includes a real indebtedness less than that named in the conveyance.

2. The rule that oral testimony is inadmissible to vary the terms of a written instrument, applies in suits between the parties, but cannot be invoked to affect the rights of third parties.

3. It having been shown that the grantor had combined with the grantee to hinder creditors, subsequent declarations of the grantor as to the motives inducing him to make the conveyance are admissible in an action by the creditors.

4. It is discretionary with the trial court whether leading questions be allowed.

5. The giving of an instruction which cannot prejudice the appellant, though not warranted by the evidence, is not sufficient ground for a reversal.

6. An appellate court will not pass upon the question as to the propriety of giving an instruction to the jury after the submission of the cause, unless the attention of the trial court was called to the alleged error, in the motion for a new trial.

APPEAL from the St. Louis Circuit Court.
*Affirmed.*
BROADHEAD, SLAYBACK & HAEUSSLER, for the appellant.
A. MCELHINNEY, for the respondents.

BAKEWELL, J., delivered the opinion of the court.
This is an action by the mortgagee in a chattel mortgage,

against a constable and certain creditors of the mortgageor, for damages for levying upon and selling under attachment the mortgaged property.

There was evidence in the case tending to show that one Reus, a farmer, owed $500 to the plaintiff. He had personalty worth about $1,600, and owed debts, and his creditors were threatening suit. It was agreed between Cordes and Reus, for the purpose of securing Cordes and keeping off the other creditors, so as to enable Reus to make his crop, in which event he hoped and intended to pay every one in full, that Reus should execute to Cordes a mortgage upon all his personalty, to secure a note for $1,000. Five hundred dollars was to be paid to Reus by Cordes, and at once returned; and Cordes says he had the intention of letting Reus have money from time to time, as he would want it, to carry on his farm. In accordance with this understanding, Cordes and Reus went to a notary, by whom the mortgage and note were drawn up for $1,000. The papers were executed by Reus and the $500 paid by Cordes in the presence of the notary, with whom the deed was left, with directions to record it. The old notes held by Cordes were also then destroyed. Immediately on leaving the presence of the notary, Reus returned to Cordes the $500; and this sum was credited on the back of the note.

There was a verdict and judgment for defendants.

1. The instructions given are numerous, and so lengthy that it would be inconvenient to set them out. They seem to declare the law applicable to the case in a way of which appellant has no reason to complain.

If the chattel mortgage was contrived by Reus and Cordes with intent to hinder, delay, or defraud the creditors of Reus, or to protect his property from his other creditors, or to deceive his creditors as to the amount of his encumbrance, the court declares the mortgage void as to them, even though Cordes accepted the mortgage to secure a *bona fide* debt to him. We see no error in this. A con-

veyance made in good faith is not void merely because it delays some creditors, or because it is intended to delay them. But a conveyance made in bad faith, by collusion between the debtor and creditor, to cover up property, by naming and professing to secure an indebtedness not really existing, is void as to creditors; and the fact that it also names a real, existing indebtedness, and is really made to secure that real debt, will not save the deed. The fact that, at the moment the note was executed for $1,000, Reus had in his possession that amount of Cordes's money, is immaterial, if $500 had been received with the understanding that it should be at once returned to Cordes, and if this was done. Such a proceeding would be a mere trick, and could have no effect to validate the mortgage.

2. It is contended that the testimony of Reus, the maker of the mortgage, was incompetent; that he should not have been permitted, against the objection of plaintiff, to show that the amount of his indebtedness was not correctly set out in the deed. The rule that oral evidence is inadmissible to vary the terms of a written instrument is invoked. But this rule has no application here, because this is not a suit between the parties to the instrument. The rule was never intended to affect third parties. The testimony of Reus as to his motives was immaterial. Though the effect of the conveyance may have been to secure a valid debt of the mortgagee, the testimony of Cordes himself shows, and it is undisputed, that both mortgageor and mortgagee participated in executing a mortgage for double the amount of the real indebtedness, for the purpose of deceiving the creditors of the mortgageor, and thus hindering them from collecting their debts by process. This made the instrument fraudulent in law, and void as to creditors.

3. Evidence was introduced of declarations of Reus at the time of the levy, to the effect that he had made the mortgage to keep his creditors from "jumping him." The combination to hinder the creditors of the grantor was

shown, and these subsequent declarations of Reus were, therefore, competent against the beneficiary in the deed. *Bank* v. *Russell*, 50 Mo. 531. Nor do we see how they could prejudice the case. There was really no ground for dispute as to the material facts as set out in this opinion. They appear sufficiently from the testimony of Cordes himself.

4. Plaintiff's counsel was permitted to put to the witness Reus some leading questions. This is a matter in the discretion of the court. Reus showed an indisposition to answer, which justified the form of the question. As to the substance of the answer, it did not prejudice plaintiff's case, for the reasons already stated. The understanding between Cordes and Reus that a mortgage, sham in its character as to half the consideration, should be made, and the execution of the instrument in accordance with the understanding, being shown ; and it further appearing that this was done on the suggestion of Cordes that if he had this mortgage others would not levy, and it would protect Reus, it is perfectly immaterial how Reus might answer a leading question as to his motives. The question as to the right to interrogate the grantor of an alleged fraudulent conveyance as to his motives in executing the instrument, does not arise in the present case.

5. An instruction was given to the effect that the landlord of Reus had a lien on the crop for any rent due and unpaid. It may be gathered from the testimony that Reus rented, and did not own his farm. We cannot see how this instruction could have prejudiced the plaintiff; and if it should be clear that it was not warranted by the evidence, and that it had no bearing on the case, we do not think that the giving of it was such error as to warrant a reversal of the judgment.

6. After the cause had been submitted to the jury, when they had been out some time, they sent into the court the following note : " Part of the jury think it necessary for

fraud (that is, actual intent to swindle the other creditors) to be proven, and lay no stress on the words ' delay or hinder.' A clearer explanation of the terms would help us.'' To this the court sent in the following written reply : '' In answer to the above question, the court instructs the jury, that if the mortgage in question was contrived by Reus and the plaintiff to hinder or delay the other creditors of Reus in collecting their claims, or to deceive them as to the amount of the encumbrance on the mortgaged property, that renders the mortgage void, just as much as an intent to actually defraud the other creditors of the amount of their claims or debts.''

It is said in *Dowzelot* v. *Rawlings*, 58 Mo. 78, that where a jury declare their inability to agree, and there has been some error or oversight, it may be cured by giving an additional instruction. It is plain, however, that the statute directs that instructions shall be given or refused before the case is submitted to the jury. Rev. Stats. Mo., sect. 3655. The present case was not one of error or oversight, and consequent inability of the jury to agree. If one instruction may be given after argument, twenty may be given in the same way ; and the object of the law will thus be entirely defeated. The practice is not to be justified, unless in some exceptional case, of the character referred to in the case just cited. The point, however, was not saved in the present case, since the giving of the instruction after the submission of the cause is not set out as one of the grounds in the motion for a new trial. It is alleged in that motion that '' the court gave illegal and improper instructions.'' If that allegation was intended to cover the giving of an instruction out of the proper time, it failed of its purpose. The motion for a new trial must distinctly state the grounds, so that the attention of the trial court may be called to the point complained of. *Sweet* v. *Maupin*, 65 Mo. 65.

There appears no error in this record to warrant a reversal of the judgment, and it is therefore affirmed. All the judges concur.